## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**THREE LITTLE PIGS BAR-B-Q**, **INC. d/b/a
THREE LITTLE PIGS BAR B CUE,**
individually and behalf of all others similarly
situated,

          Plaintiff,

v.

**ERIE INSURANCE EXCHANGE,**

          Defendant.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Three Little Pigs Bar-B-Q, Inc. d/b/a Three Little Pigs Bar B Cue ("Three Little Pigs" or "Plaintiff"), both individually and on behalf of all others similarly situated, files this class action Complaint against Defendant Erie Insurance Exchange ("Erie" or "Defendant"), and in support of the Complaint alleges the following on information and belief based on further reasonable investigation and discovery, except where specifically identified as being based on personal knowledge:

## INTRODUCTION

1.      On personal knowledge, Plaintiff Three Little Pigs operates a restaurant located at 5145 Quince Road, Memphis, Tennessee.  Plaintiff is a corporation that is active and in good standing and is based in Memphis, Tennessee.

2.      To protect the restaurant premises and the income from operation of the restaurant, Three Little Pigs purchased*, inter alia,* an all risk general liability policy issued by Erie with policy number Q970977911. This insurance policy was effective April 1, 2019 through April 1, 2020 and

was renewed on April 1, 2020 through April 1, 2021.  The terms of those policies are collectively referred to herein as the "Policy." [1]

3.      The Policy was issued by Defendant Erie Insurance Exchange. Under the Policy, Erie is responsible for, *inter alia*, claims handling, including receiving and managing claims and loss notices, responding to questions about insurance and coverage, investigating claims, and paying claims for covered losses.

4.      The Policy is a bilateral contract. Plaintiff agreed to pay monthly premiums to Erie in exchange for promises of coverage for certain losses.

5.      Among other types of coverage, the Policy protects Plaintiff against a loss of business income due to an interruption of the restaurant's operations due to loss of use and/or damage at the premises of the business. This type of coverage is often referred to as business interruption coverage.

6.      The Policy also provides "Extra Expense" and "Full Resumption of Operations" coverage, under which Defendant promised to pay certain expenses incurred that would not have been incurred due to loss or damage at the premises of the business.

7.      Additionally, the Policy provides "Civil Authority" coverage, under which Defendant promised to pay for loss of business income sustained when the action of a civil authority prohibits public access to the business premises.

8.      Plaintiff duly complied with its obligations under the Policy, and paid the requisite premiums to Defendant.

9.      Beginning in March 2020, Plaintiff was forced to suspend business operations at the restaurant due to risk of infection of COVID-19 and/or actions of civil authorities prohibiting

---

[1] Redacted true and correct copies of the policies are attached to this complaint as Exhibits "A" and "B" respectively, and are incorporated herein by reference.

full access to and occupancy of the restaurant. This interruption, which is ongoing in terms of its impact on business operations, has caused Plaintiff to suffer significant losses and incur significant expenses.

10. On or about March 16, 2020 Plaintiff submitted a claim for coverage under the Policy.

11. Under the Policy, Defendant promised to cover these losses and expenses, and is obligated to pay for them. But in breach of its contractual obligations, Defendant summarily denied the claim of Plaintiff and failed to pay for these losses and expenses, and has taken the position it will not pay any such similar claims no matter the circumstances to putative class member.

12. Defendant is failing and refusing to pay for similar losses and expenses of other insureds holding policies that are, in all material respects, identical.

## THE PARTIES

13. On personal knowledge, Plaintiff Three Little Pigs Bar-B-Q, Inc. d/b/a Three Little Pigs Bar B Cue is a Tennessee corporation that is active and in good standing, and is organized to business in the state of Tennessee. The restaurant premises are located at 5145 Quince Road in Memphis, Tennessee.

14. Defendant Erie Insurance Exchange is a member of the Erie Insurance Group, which is organized under the laws of Pennsylvania, and has its principal place of business in the state of Pennsylvania. Erie Insurance Exchange is the issuer of the Policy.

15. At all times material hereto, Defendant engaged in substantial and not isolated activity on a continuous and systematic basis in the state of Tennessee, namely by issuing, selling and/or underwriting insurance policies in Tennessee and by contracting to insure or underwrite insurance on property located in Tennessee.

16.     Under the applicable law and the terms of the Policy, service of process on Defendant may be effectuated by serving its Attorney-In-Fact, Erie Indemnity Company at 100 Erie Insurance Place, Erie, Pennsylvania 16530.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the parties to this action. Plaintiff is a resident of Tennessee, Defendant transacts business in this State, and the members of the Class are resident citizens of this State and any other state where similar policies were issued and/or underwritten by Defendant.

18.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendant and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

19.     This Court has personal jurisdiction over Defendant because Plaintiff's claims arise out of, among other things, Defendant conducting, engaging in, and/or carrying on business in Tennessee; Defendant breaching a contract in this State by failing to perform acts required to be performed in this State; and Defendant contracting to insure or underwrite the insurance of property in this State, including but not limited to the premises insured under the Policy. Defendant also purposefully availed itself of the opportunity to and privilege of conducting activities in the state of Tennessee by marketing and/or underwriting insurance policies and services within this State, and intentionally developing relationships with brokers, agents, and customers within this

State to insure property within the State, which resulted in the issuance of the Policy to Plaintiff, and similar policies to thousands of other businesses.

20.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant maintains substantial operations in this District; many Class Members either reside or did business with Defendant in this District; Defendant engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and Defendant entered into transactions and received substantial profits from insureds who reside in this District. Pursuant to Local Rule 3.3(a), venue is proper in the Western Division of this District, as Plaintiff resides in the Western District of Tennessee, and the Western Division of this District is where Plaintiff's claim arose.

## FACTUAL BACKGROUND

### *The Policy*

21.     In March 2019, Plaintiff Three Little Pigs renewed the Policy, a property insurance policy issued by Defendant Erie.  The initial relevant policy has a policy period of April 1, 2019 to April 1, 2020.  This policy was subsequently renewed and is the same in material respects.  The renewed policy has a policy period of April 1, 2020 to April 1, 2021.  The insured property under the Policy is located at 5145 Quince Road, Memphis, TN  38117-6846.

22.     The Policy is an all risk insurance policy.  An "all risk policy" covers all risks of loss that may happen (except by fraudulent acts of the insured), no matter their source and however fortuitous the event or circumstance may be, as long as it is beyond the control of the insured and unless the policy contains a specific provision expressly excluding the loss from coverage.[2]

---

[2] All Risk policies differ from "enumerated risk" policies that only covered certain listed risks such as fire, lightning, wind, theft, collapse, etc.  Insurers developed all risk policies to provide more comprehensive coverage than had previously been offered.  STEVEN PLITT ET AL, 10A COUCH ON INSURANCE 148:50 (3RD ED.).

Plaintiff is not required to prove the precise cause of the loss or damage to demonstrate coverage exists under the Policy or that the loss or damage was occasioned by an external cause, but simply that the "loss" was due to a fortuitous circumstance or event.

23.     Consistent with the all-risk nature of the Policy, Defendant specifically agreed to pay for "direct physical 'loss' of or damage to Covered Property at the premises described in the 'Declarations' caused by or resulting from a peril insured against." The term "loss" is defined as "direct and accidental loss of or damage to covered property." As to the relevant Income Protection Coverage under the Policy, "[t]his policy insures against direct physical 'loss', except 'loss' as excluded or limited in this policy." The Policy covers all property Plaintiff owns, rents or occupies, as well as business personal property under various provisions of the Policy, including the "Restaurants Enhancement Endorsement."

24.     Several of the terms in the Policy referenced herein, either in isolation or in the context in which they are used (e.g., "direct and accidental", "damage to property", "direct physical", "loss", and "peril insured against") are ambiguous and not defined in the Policy. Ambiguous language in insurance contracts are to be construed liberally in favor of the insured in favor of providing coverage and strictly against the insurance company against denying coverage, considering the policy in its entire context and the nature of the risks the policy insures against.

25.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in the provisions of the Policy entitled "Income Protection – Coverage 3"". In the Policy, Defendant promised to pay for "the actual loss of 'income' and/or 'rental income' sustained by" Plaintiff, which "shall not exceed: 1. The actual reduction of 'income' and/or 'rental income' during the 'interruption of business.'" In addition, Defendant agreed that it "will pay up to $100 a day, for seven days, after

your business is suspended to cover loss of 'income' and/or 'rental income' sustained by you while you are determining your actual income protection loss." In addition, Defendant agreed, "[w]e will pay the actual income protection loss for only such length of time as would be required to resume normal business operations.  We will limit the time period to the shorter of the following periods: 1. The time period required to rebuild, repair, or replace such part of the Building or Business Personal Property … that has been damaged or destroyed as a direct result of an insured peril; or 2. Eighteen (18) consecutive months from the date of loss."

26.     "Income" as used in the Policy means the net profit that the business would have earned absent the interruption of business operations:

> "Income" means the sum of net income (net profit or loss before income taxes) that would have been earned or incurred and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests, and rents.

27.     "Interruption of business" means, among other things, a slowdown or cessation of the insured's business:

> "Interruption of business" means the period of time that your business is partially or totally suspended and it:
> 1.  Begins with the date of direct "loss" to covered property caused by a peril insured against; and
> 2.  Ends on the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality.

28.     In addition to promising to pay for loss of income under the Policy, Defendant also promised to pay for certain necessary "Extra Expense" that was incurred "at the premises described in the 'Declarations … anywhere in the coverage territory." Extra Expense is defined as:

"Extra expense" means necessary expenses you incur due to partial or total "interruption of business" resulting directly from "loss" or damage to property on the premises described in the "Declarations" or to your food truck or trailer anywhere in the coverage territory from a peril insured against. "Loss" or damage also includes property in the open, or in a vehicle, on the premises described in the "Declarations" or within 1,500 feet thereof, or to your food truck or trailer when anywhere in the coverage territory.

We will pay necessary actual and necessary "extra expenses" (other than the expense to repair or replace property) sustained by you to:

1. Avoid or minimize the "interruption of business" and to continue your business operations:

    a. At the premises described in the "Declarations"; or

    b. At replacement premises or at temporary locations, including:

        1) Relocation expenses; and

        2) Costs to equip and operate the replacement of temporary locations; or

    c. Anywhere in the coverage territory for your food truck or trailer.

2. Minimize the "interruption of business" if you cannot continue your business operations to the extent it reduces the amount of loss that would have been payable under loss of "income" and/or "rental income".

We will not pay any "loss" or damage to your Building(s), Business Personal Property and Personal Property of Others, or food truck or trailer. We also will not pay the cost of research or any other expense to replace or restore your valuable papers and records or "electronic data". We will pay the cost to repair or replace your covered property and the amount to research, replace, or restore the lost information on damaged valuable papers and records or "electronic data" to the extent it reduces the amount of loss that would have been payable under loss of "income" and/or "rental income".

29.    The Policy also provides "Civil Authority" coverage. Under this aspect of the coverage under the Policy, Defendant promised to pay for the actual loss of "Income" Plaintiff sustained and necessary "Extra Expense" caused by an "action of civil authority that prohibits access to the premises described in the Declarations", under the following conditions:

When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" or access to your food truck or trailer anywhere in the coverage territory provided that both of the following apply:

a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" or your food truck or trailer are within that area but are not more than one mile from the damaged property; and

b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "income" and/or "rental income" will begin 72 hours after the time of the first action of civil authority that prohibits access to the premises described in the "Declarations" or to your food truck or trailer anywhere in the coverage territory and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for "extra expense" will begin immediately after the time of the first action of civil authority that prohibits access to the premises described in the "Declarations" or to your food truck or trailer anywhere in the coverage territory and will end:

a. Four consecutive weeks after the date of that action; or

b. When your Civil Authority coverage for "income" and/or "rental income" ends;

whichever is later.

30.    This Civil Authority provision is an independent basis for business interruption coverage. That is, it can be triggered even when the standard business interruption coverage is not.

31.    Defendant also promised to pay, under the Full Resumption of Operations provisions of the Policy, for actual loss of income for an additional 60 days, as follows:

We will also pay your actual loss of "income" and/or "rental income" for an additional 60 days if your "income" and/or "rental income" after operations are resumed is less than your "income" and/or "rental income" before the loss. The additional amount we will pay will start after the later of the following times:

a. The date on which the liability for **Income Protection - Coverage 3** would terminate if this clause had not been included; or
b. The date on which repair, replacement, or rebuilding of such part of the damaged or destroyed property described in the "Declarations" or to your food truck or trailer is actually completed.

32.     Some portions of the Policy are standardized forms drafted by the Insurance Services Office (ISO). The ISO is a company that drafts standard policy language for use in insurance contracts.

33.     For the reasons detailed below, the losses at issue are fortuitous and not attributable to any actions of Plaintiff.  Neither Plaintiff's Policy, nor those of putative class members, contain any exclusion that would allow Defendant to deny coverage for losses caused by the interruption of Plaintiff's business and/or the actions of civil authorities.

34.     In fact, while part of an insurance industry attempt to defraud regulators by claiming it was a clarifying an exclusion when in fact it was attempting an unwarranted expansion of an exclusion without a reduction in premiums, in 2006 the ISO drafted a new endorsement, CP 01 40 07 06.  This endorsement acknowledged that claims for business interruption losses would be filed under existing policy language for losses resulting from the presence of disease-causing agents, and might not be covered under any pollution exclusion. Endorsement CP 01 40 07 06, which other insurers have since incorporated in policies, attempted to expand excluded losses by providing that the insurer "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Significantly, Defendant chose to not include this endorsement in Plaintiff's Policy.

And as stated below, any claimed "pollution" exclusion, on its face, is inapplicable to the claims at issue here.

35.     Accordingly, because the Policy is an all-risk policy and does not specifically exclude the losses that Plaintiff has suffered, and the losses sustained are the result of fortuitous acts beyond the control of Plaintiff and others, these losses are covered under Plaintiffs' Policy and the policies of other similarly situated persons.

**Plaintiff's Covered Losses**

36.     On March 13, 2020, the Governor of Tennessee, Bill Lee, declared a public health emergency in response to the appearance of COVID-19 in the State of Tennessee.

37.     As of March 22, 2020, according to the Shelby County Department of Public Health, there were 66 confirmed cases of COVID-19 in Shelby County, with 505 positive COVID-19 tests statewide.  As of July 21, 2020, Shelby County alone, where Three Little Pigs is located, had 16,978 reported cases of COVID-19, with at least 244 deaths.  As of that date, there have now been over 30,432 positive COVID-19 tests in Tennessee. Thus, this is a pervasive dangerous physical condition that exists throughout the State, including within the immediate vicinity of Plaintiff's restaurant.

38.     These dangerous physical conditions have prompted actions by civil authorities throughout the United States ("Civil Authority Actions"), including but not limited to civil authorities with jurisdiction over the Plaintiff's restaurant: the City of Memphis, County of Shelby, and the state of Tennessee.

39.     Consistent with the actions of all states nationwide, on March 22, 2020, Governor Lee issued Executive Order No. 17, An Order to Mitigate The Spread of COVID-19 By Limiting Social Gatherings, Dine-In Service, and Gym Use, and Exposure at Nursing and Retirement

Homes, and Providing Flexibility for Restaurants Regarding the Sale of Alcohol.  This Order, which expressly covers Shelby County, requires all restaurants to close except for curbside or take-out orders.[3]

40.     On March 23, 2020, the City of Memphis issued Ordinance No. 03-2020 establishing a "Safer at Home Directive and Closure of Non-Essential Services and Businesses." Among other things, this Order required businesses within the city of Memphis to comply with the Order of the Governor, requiring closure of all restaurants unless the restaurants prepare food for delivery or carry out.  Ordinance No. 03-2020 was expressly issued in response to COVID-19 "continu[ing] to present a severe danger to public health."[4] Page 2, Section (3) of the Ordinance specifically states:  "Mass Gatherings Prohibited.  All public and private gatherings of more than ten people occurring outside a single household or living unit are prohibited…"  This Order was extended multiple times by Mayor Strickland, and expired on June 1, 2020.

41.     On March 30, 2020, Governor Bill Lee Executive Order No. 21, An Order Amending Executive Order No. 17 to Further Mitigate the Spread of COVID-19 by Limiting Non-Essential Services and Gatherings, which extended Executive Order No. 17 through April 14, 2020.  Governor Lee also issued Executive Order No. 22, An Order Directing Tennesseans to Stay Home Unless Engaging in Essential Activities to Limit Their Exposure to and Spread of COVID-19. This order requires non-essential businesses to close access to their premises to the public.[5]

42.     On April 13, 2020, Governor Lee extended Tennessee's Stay At Home Order (Order Nos. 17 and 22) through April 30, 2020.  While Order No. 29 was issued on April 24, 2020,

---

[3] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee17.pdf
[4] https://covid19.memphistn.gov/wp-content/uploads/2020/03/Executive-Order-No-03-2020.pdf
[5] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee21.pdf;
https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee22.pdf

which reopened restaurants in the state, it gave county health departments authority to maintain orders in several counties including Shelby, where Three Little Pigs operates its business.[6]

43.    On June 1, 2020, the Shelby County Health Department released a Health Directive No. 5 that allowed restaurants to reopen, but those restaurants must be adhere to social distancing policies, and dining groups should be limited to no more than six people.  As of the date of filing of this Complaint, this Order remains in effect.[7][8]

44.    For a period of time of at least four weeks, Plaintiff's business was partially or totally suspended as a result of a peril insured against under the Policy, and it was prohibited from letting customers access its premises for dining purposes as a result of these Civil Authority Orders during that time. Even now Plaintiff is unable to resume normal business operations and is experiencing a significant slowdown of its business operations.  In addition, access to premises other than Plaintiff's restaurant that are in the immediate surrounding area were also prohibited as a result of the Civil Authority Actions, resulting in damage to those properties as well as a direct result of such dangerous physical conditions.

45.    Plaintiff was prohibited from letting customers access its premises for dining purposes as a result of these Civil Authority Orders, and even now is unable to resume normal business operations and is experiencing a significant slowdown of its business operations.  In addition, access to premises other than Plaintiff's restaurant that are in the immediate surrounding area of the restaurant was also prohibited as a result of the Civil Authority Actions, resulting in damage to those properties as well.  And when Plaintiff was permitted to reopen, it could only do so if it had made structural changes to the premises, which it did at significant cost by, inter alia,

---

[6] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee29.pdf
[7] http://shelbytnhealth.com/DocumentCenter/View/1748/Health-Directive-No-5?bidId=
[8] The Orders and Ordinances referenced in paragraphs 39-43 are collectively referred to as the "Civil Authority Actions."

removing tables and having to pay storage costs for those tables, as well as the loss of use of those tables and decreased business traffic.

46.     The COVID-19 virus, while microscopic, is still tangible and material.  It is not something perceived in the mind; rather, the public has been bombarded with pictures of its exact physical structure. While the epidemiological science is developing, it is spread by human interaction, either by direct contact or by persons being within close proximity to each other.  It is spread when these microscopic but tangible elements come into contact with a person, or with tangible surfaces that are thereafter touched by a person. That is one of the primary reasons why, in addition to the Civil Authority orders described herein, in an effort to slow or stop the spread of the virus, businesses are required or encouraged by civil authorities to engage in strict cleaning regimens of tangible surfaces, or to shut down entirely to engage in extensive cleaning, at significant additional cost

47.     Thus, the virus is "physical" in that it is capable of being perceived, acquired and exchanged through senses and is tangible in terms of having certain identifiable properties that exist in the physical world. Its spread is a result of a physical incident or accident, or a series of incidents or accidents, that result in companies such as Plaintiff being physically unable or prohibited from performing their essential functions. And as set forth herein, it has resulted in significant forms of loss or damage to Plaintiff's business and resulting losses of use.

48.     In order to reopen many businesses, including Plaintiff, were required to structurally alter the interior of their premises, at added costs, such as by removing tables to allow for appropriate social distancing and associated storage costs.  The fewer tables there are, the fewer customers that can be served. In addition, expenses and losses such as the costs of reopening plans and increased costs associated therewith; remediation costs, either incurred as a result of having to

engage in increased cleaning costs or shutting down entirely to avoid further spread and temporarily incapacitating the facility from operating; being considered temporarily unfit for occupancy and use and resulting in a loss of its essential functionality or use; spoiled food discarded as a result of various Civil Authority shutdown orders or directives, and other increased costs or losses either resulting from or that are attributable to the presence or risk of presence of this physical property are all forms of damage or losses incurred as a result of a direct and accidental loss of or damage to covered property.

49.    Based on such facts, a reasonable person and Plaintiff's objective expectations would establish that, considering the context of the entire policy that is in the nature of an "all risk" policy that covers a litany of losses attributable to events beyond the control of the insureds,  any such losses of money or increases in costs constitute "loss" as that term is used in the Policy even without any showing that the property itself experienced any form of alteration (which in Plaintiff's situation did, as set forth above). Such damage or loss resulted directly from a peril insured against.  As these losses and damage are accidental, fortuitous, direct, physical, and arise out of or are related to a peril insured against, they are insurable losses covered under the Policy.

50.    There has been a "loss" or damage to the covered premises caused by a fortuitous event covered under the Policy that occurred during the Policy period as that term is defined in the Policy, including a loss of use of tangible property that was not directly physically injured. Plaintiff's premises has had a loss by, *inter alia*, the pervasive nature of the Civil Authority Actions denying or preventing access to the property and facilities immediately adjacent to that property, the loss of tangible physical property within the premises in terms of food purchased by Plaintiff prior to the Civil Authority Actions that spoiled or had to be discarded, the loss of use of tangible physical property within the premises in terms of the restaurant's tables, equipment and facilities,

loss of use of the tangible restaurant premises by virtue of the Civil Authority Orders being deemed to be physically uninhabitable and untenantable by customers and rendering the facility unfit for occupancy, preventing customers from physically occupying the property, being forced to incur increased sanitizing costs and ongoing payroll obligations, having the function of the premises to be nearly eliminated or destroyed, and/or causing a decline in use and causing an Interruption of business operations on the premises that could result in the diminution of value of the premises. As access to the premises for in customer dining, the primary purpose of the restaurant, was specifically prohibited by the Civil Authority Actions, Plaintiff's business also sustained an actual loss of business income as a result of the Civil Authority Actions.

51.     Additionally, Plaintiff's restaurant has suffered an interruption of normal business operations in terms of a significant slowdown of business activities and a cessation of all restaurant in-dining operations on the premises until recently; sustained losses of business income as a result; and incurred extra expenses.   Such slowdown or cessation was necessary due to, *inter alia*, the Civil Authority Actions that prohibited public access to the premises for reasons beyond Plaintiff's control.  During at least a 4 week period of time when the Civil Authority Actions have been in effect, Plaintiff's customers were prohibited from accessing the premises at all or other than for limited use and not accessing the premises.   This interruption of operations was caused by fortuitous events and resulted in direct physical loss to the premises, as set forth above.

52.     In compliance with the Civil Authority Actions, Plaintiff was unable to reopen for in dining service from March 20, 2020 until May 4, 2020. Between May 4, 2020 and the date of this filing, Plaintiff has only been able to operate on a 50% dine in capacity and will not be able to open at a dine in capacity higher than 50% until Civil Authority Actions are relaxed.  Plaintiff has not, at the time of the filing of this action, returned to normal business operations, and it is unlikely

Plaintiff will be able to fully restore its operations in the next year.  Such losses are not due to any condition that would have existed if no loss occurred or no Civil Authority Actions had been taken.

53.     These losses and expenses have continued through the date of filing of this action.

54.     These losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy, and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

55.     While not an element of establishing Plaintiff's claim, Defendant has taken the position such claims are barred by the "pollution" exclusion.  However, and with the presumption that all exclusions are to be construed in favor of providing coverage, that exclusion is inapplicable to these claims, because the Policy defines "pollution" as a "solid, liquid, gaseous or thermal irritant or contaminant".  None of the conditions at issue are attributable to anything that is a solid, liquid, gaseous or thermal irritant or contaminant as those terms have been construed in the past and would be so construed by reasonable persons.

56.     Accordingly, on or about June 24, 2020, Plaintiff provided notice of a claim for its losses and expenses to Defendant, consistent with the terms and procedures of the Policy.

57.     But contrary to the plain language of the Policy, and to Defendant's corresponding promises and contractual obligations, by letter dated July 15, 2020, which included a form denial, Defendant summarily refused to pay for Plaintiff's covered losses and expenses under the terms of the Policy.

58.     This denial appears to be consistent with the position Defendant has taken with other similarly situated businesses nationwide, refusing all claims for coverage no matter the circumstances.

## CLASS ACTION ALLEGATIONS

59.    The class claims all derive directly from a single course of conduct by Defendant: its systematic and uniform refusal to pay insureds for covered losses based on the actions taken by civil authorities to suspend or curtail business operations, no matter the circumstance.

60.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

61.    Plaintiff seeks to represent a class of persons and entities located in Tennessee and such other states as the Court may deem appropriate, defined as follows (collectively, the "Class" or "Classes"):

a)    All persons and entities with Business Income coverage and/or Extended Business Income coverage under a property insurance policy issued or underwritten by Defendant that suffered an interruption of business operations and for which Defendant have either actually denied or stated they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Business Income Coverage Class").

b)    All persons and entities with Extra Expense coverage under a property insurance policy issued or underwritten by Defendant that suffered an interruption of business operations and for which Defendant have either actually denied or stated they will deny a claim for the expenses or have otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extra Expense Coverage Class").

c)     All persons and entities with Civil Authority coverage under a property insurance policy issued or underwritten by Defendant that suffered an actual loss of Business Income and/or Extra Expense caused by an action of a civil authority that prohibited full access to the premises, and for which Defendant have either actually denied or stated they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Civil Authority Coverage Class").

62.     Excluded from each defined proposed Classes are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

63.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

64.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity and Ascertainability**

65.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of each proposed Class, and these individuals and entities are spread out across the State and the United States.

66.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendant's or its agents' books and records. Class members

may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Predominance of Common Issues**

67.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Defendant issued all-risk policies to all the members of each proposed Class in exchange for the payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)      Whether Plaintiff and the Class members suffered a covered "loss" under the policies issued to members of the Class;

b)      Whether Defendant wrongfully denied all claims based on the facts set forth herein;

c)      Whether Defendant's Business Income coverage applies based on the facts set forth herein;

d)      Whether Defendant's Civil Authority coverage applies to a loss of Business Income based on the facts set forth herein;

e)      Whether Defendant's Extra Expense coverage applies to a loss caused by the interruption of Plaintiff's and Class members' business based on the facts set forth herein;

f)      Whether Defendant's Civil Authority Coverage applies to a loss of Business Income caused by the orders of local, municipal, city, county and/or state governmental entities requiring the interruption of business operations in whole or in part;

g)      Whether Defendant has breached contracts of insurance through a uniform and blanket denial of all claims for business losses under the circumstances alleged here;

h)      Whether Plaintiff and the Class members suffered damages as a result of Defendant's actions; and

i)      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

**Typicality**

68.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendant. Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under the applicable insurance policies. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequacy of Representation**

69.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation.

70.      Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor its counsel has interests adverse to or that irreconcilably conflict with those of the Class members.

**Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests**

71.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendant's insurance policies that use the same language and terms as the Policy. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.

**Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is Appropriate**

72.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to Plaintiff and the members of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The Class members' claims all derive directly from Defendant's systematic and uniform refusal to pay insureds for any losses suffered that they attribute are due to risk of infection of COVID-19 and/or actions taken by civil authorities to suspend or prohibit access to and occupancy of the business.  Defendant's actions or refusal to act are grounded upon the same generally applicable legal theories. Plaintiff and Class Members are entitled to a declaration regarding their rights and obligations under such agreements, including whether Defendant is obligated to pay claims under the Policy and similar policies based on the facts and circumstances alleged above and the "all risk" nature of such insurance policies and whether the claims at issue constituted covered causes of loss.

**Superiority**

73.     To the extent applicable to certification of a Class under these circumstances, this action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The

common questions of law and of fact regarding Defendant's conduct and the interpretation of the common language in their property insurance policies predominate over any questions affecting only individual Class members.

74.     Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have little to no economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Classes would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

75.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

76.     Particularly as to the interpretation of the scope of the uniform provisions of the Policy set forth above both to Plaintiff and other members of the Classes, certification of the Classes may also be appropriate under Fed. R. Civ. P. 23(c)(4), which provides that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues."

77.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any portion of the Classes into subclasses that are each treated as a class.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT

### (On behalf of the Business Income Coverage Class)

78.     Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1-77 above, as though fully set forth herein and as applicable to the Business Income Coverage Class.

79.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

80.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

81.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy and the policies of other Business Income Coverage Class members.

82.     In the Policy, Defendant promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendant promised to pay for losses of business income sustained as a result of an interruption of business operations.

83.     Plaintiff and Business Income Coverage Class members suffered loss to Plaintiff's insured premises and other Class members' insured premises as that term is defined in the Policy, resulting in interruptions of business operations at the premises. These interruptions have caused Plaintiff and Business Income Class members to suffer losses of business income.

84.     These interruptions, and the resulting losses, triggered business income coverage under the Policy and other Business Income Coverage Class members' policies.

85.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

86.     Defendant, without justification, disputes that the Policy and other Business Income Coverage Class members' policies provide coverage for these losses.

87.     Plaintiff seeks a Declaratory Judgment that its Policy and other Business Income Coverage Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

88.     An actual case or controversy exists regarding Plaintiff's and other Business Income Coverage Class members' rights and Defendant's obligations to reimburse Plaintiff and other Business Income Coverage Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' losses of business income.

## COUNT II:  BREACH OF CONTRACT

**(On behalf of the Business Income Coverage Class)**

89.     Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1-77 above, as though fully set forth herein and as applicable to the Business Income Coverage Class.

90.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

91.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendant were paid or received the benefits of premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

92.     In the Policy, Defendant promised to pay for losses of business income incurred as a result of perils not excluded under the Policy. Specifically, Defendant promised to pay for losses of business income sustained as a result of an interruption of business operations.

93.     Plaintiff and Business Income Coverage Class members have suffered a loss to Plaintiff's insured premises and other Business Income Coverage Class members' insured premises as a result of interruptions of business operations at these premises.  These interruptions have caused Business Income Coverage Class members to suffer losses of business income.

94.     These losses triggered business income coverage under both the Policy and other Business Income Coverage Class members' policies.

95.     Plaintiff and the other Business Income Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

96.     Defendant has denied coverage and refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses.  Accordingly,

Defendant is in breach of the Policy and other Business Income Coverage Class members' policies and/or jointly and severally responsible therefor.

97.     As a result of Defendant's breaches of the Policy and other Business Income Coverage Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendant is liable.

WHEREFORE, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages resulting from Defendant's breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT III: DECLARATORY JUDGMENT

### (On behalf of the Extra Expense Coverage Class)

98.     Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1-77 above, as though fully set forth herein and as applicable to the Extra Expense Coverage Class.

99.     Plaintiff brings this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

100.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

101.    Plaintiff's Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendant were paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by the Policy and the policies of other Extra Expense Coverage Class members.

102.    Specifically, Defendant promised to pay for Extra Expenses incurred by Plaintiff and other Extra Expense Coverage Class members that the insureds would not have incurred if

there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the interruption of business, continue operations, costs of mitigation and/or to repair or replace property.

103.    Plaintiff and Extra Expense Coverage Class members suffered loss to insured premises, resulting in interruptions of business operations at these premises.  As a result, Plaintiff and other Extra Expense Coverage Class members have incurred Extra Expenses, as defined in the Policy and other Extra Expense Coverage Class members' policies.

104.    These Expenses triggered Extra Expense coverage under the Policy and other Extra Expense Coverage Class members' policies.

105.    Plaintiff and the other Extra Expense Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

106.    Defendant, without justification, disputes that the Policy and other Extra Expense Coverage Class members' policies provide coverage for these Extra Expenses.

107.    Plaintiff, both individually and on behalf of the other members of the Extra Expense Coverage Class, seeks a Declaratory Judgment that its Policy, and those of other members of the Extra Expense Coverage Class, provides coverage for these Extra Expenses.

108.    An actual case or controversy exists regarding Extra Expense Coverage Class members' rights and Defendant's obligations under Extra Expense Coverage Class members' policies to reimburse Class members for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Extra Expense Coverage Class members' policies provide coverage for Class members' Extra Expenses.

## COUNT IV: BREACH OF CONTRACT

### (On behalf of the Extra Expense Coverage Class)

109.    Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1-77 above, as though fully set forth herein and as applicable to the Extra Expense Coverage Class.

110.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Coverage Class.

111.    Plaintiff's Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendant directly or indirectly were paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by the Policy.

112.    Specifically, Defendant promised to pay for Extra Expenses incurred by Plaintiff and other Extra Expense Coverage Class members that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the interruption of business, continue operations, remediation costs and/or to repair replace property.

113.    Plaintiff and Extra Expense Coverage Class members suffered loss to insured premises, resulting in interruptions of business operations at these premises.  These interruptions have caused Extra Expense Coverage Class members to incur Extra Expenses.

114.    These Expenses triggered Extra Expense coverage under the Policy and other Extra Expense Coverage Class members' policies.

115.    Plaintiff and the other Extra Expense Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

116.     Defendant, without justification, denied coverage and refused performance under the Policy and other Extra Expense Coverage Class members' policies by denying coverage for these Extra Expenses. Accordingly, Defendant is in breach of the Policy and other Extra Expense Coverage Class members' policies.

117.     As a result of Defendant's breaches of the Policy and other Extra Expense Coverage Class members' policies, Plaintiff and other Extra Expense Coverage Class members have suffered actual and substantial damages for which Defendant is liable.

WHEREFORE, Plaintiff, individually and on behalf of other Extra Expense Coverage Class members, seeks compensatory damages resulting from Defendant's breaches of the Policy and other Extra Expense Coverage Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT V: DECLARATORY JUDGMENT

### (On behalf of the Civil Authority Coverage Class)

118.     Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1-77 above, as though fully set forth herein and as applicable to the Civil Authority Coverage Class.

119.     Plaintiff brings this Count both individually and on behalf of the other members of the Civil Authority Coverage Class.

120.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

121.     Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendant directly or indirectly were paid

premiums in exchange for promises to pay Civil Authority Coverage Class members' losses for claims covered by the policies.

122.    In the Policy and other Class members' policies, Defendant promised to pay for losses of business income sustained and extra expenses incurred when, inter alia, full access to an insured's premises is specifically prohibited by a Civil Authority Order and the civil authority action is taken in response to dangerous physical conditions.

123.    Plaintiff and other Civil Authority Coverage Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited full access to insured premises under the Policy and Civil Authority Coverage Class members' policies.

124.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Civil Authority Coverage Class members' policies.

125.    Plaintiff and the other Civil Authority Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

126.    Defendant, without justification, disputes that the Policy provides coverage for these losses.

127.    Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses that Civil Authority Coverage Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

128.    An actual case or controversy exists regarding Civil Authority Coverage Class members' rights and Defendant's obligations under Civil Authority Coverage Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff, both individually and on behalf of other Civil Authority Coverage Class members, requests that this Court enter a Declaratory Judgment declaring that the Policy provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiff and the other Class members.

## COUNT VI: BREACH OF CONTRACT

### (On behalf of the Civil Authority Coverage Class)

129.    Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1-77 above, as though fully set forth herein and as applicable to the Civil Authority Coverage Class.

130.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

131.    Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendant directly or indirectly were paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses and expenses covered by the Policy.

132.    In the Policy and other Civil Authority Coverage Class members' policies, Defendant promised to pay for losses of business income sustained and extra expenses incurred when, among other things, full access to an insured's premises is prohibited by a Civil Authority Order and the civil authority action is taken in response to dangerous physical conditions.  The Civil Authority Actions satisfy all the requirements of this coverage.

133.    Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited full public access to insured premises under the Policy and Civil Authority Coverage Class members' policies.

134.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Civil Authority Coverage Class members' policies.

135.    Plaintiff and the other Civil Authority Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

136.    Defendant, without justification, has refused performance under the Policy and other Civil Authority Coverage Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendant is in breach of the Policy and other Civil Authority Coverage Class members' policies.

137.    As a result of Defendant's breaches of the Policy and other Civil Authority Coverage Class members' policies, Plaintiff and other Civil Authority Coverage Class members have suffered actual and substantial damages for which Defendant is liable.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Defendant's breaches of the Policy and other Civil Authority Coverage Class members' policies. and seek all other relief deemed appropriate by this Court.

## COUNT VII: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### (On behalf of All Classes)

138.    Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1-77 above, as though fully set forth herein and as applicable to all Classes.

139.    The agreements described in this Complaint constitute enforceable contracts under applicable state law.

140.    There is implied in every contract a duty of good faith and fair dealing in its performance and enforcement.

141.    The specific requirements of this duty depend upon the contract, with courts imposing a construction that is fair and reasonable under the circumstances.

142.    At a minimum, this duty requires Defendant to perform under the insurance contracts with Plaintiff and Class Members in a manner consistent with state and federal law and to protect the interests of Plaintiff and Class Members in having the promises required by the agreements and applicable law performed and by ensuring companies do not engage in unfair dealing.

143.    Defendant, either separately or by acting in concert with third parties, breached this duty of good faith and fair dealing owed to Plaintiff and Class Members, and in undertaking such actions frustrated or denied them the benefits of their original bargain.

144.    Defendant also breached this duty of good faith and fair dealing owed to Plaintiff and Class Members by other acts or omissions of which Plaintiff is presently unaware and that will be shown according to proof at trial.

145.    As a proximate result of the conscious and objectively unreasonable conduct of Defendant as set forth above, which conduct was either intended, designed to or did frustrate the rights of Plaintiff and Class Members arising out of such agreements and their reasonably justified expectations based upon the requirements of the law, Plaintiff and Class Members have suffered and/or will continue to suffer in the future damages plus interest, and other economic and consequential damages, in an amount to be proven at trial.  As a further proximate result of the conduct of Defendant, Plaintiff was compelled to retain legal counsel and to institute litigation to obtain the benefits of these agreements and covenants for the benefit of themselves and all other Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A.    Entering an order certifying the proposed Classes, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

B.    Entering declaratory judgments on Counts I, III, and V in favor of Plaintiff and the members of the Business Income Coverage Class, the Extra Expense Coverage Class and the Civil Authority Coverage Class as follows:

    i.    That all Business Income, Extra Expense and Civil Authority losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiff's and Class members' policies; and

    ii.    Defendant is obligated to pay for the full amount of the Business Income, Extra Expense and Civil Authority losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above as insured and covered losses and expenses under Plaintiff and Class members' policies;

C.    Entering judgments on counts II, IV, VI and VII in favor of Plaintiff and the members of the Business Income Coverage Class, the Extra Expense Coverage Class and the Civil Authority Coverage Class, and awarding damages in amounts to be determined at trial, as applicable;

D.    An order requiring Defendant to pay both pre- and post-judgment interest on any

amounts awarded;

E.     An award of costs and attorneys' fees; and

F.     Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues and claims so triable.

Dated: July 24, 2020

/s/ J. Luke Sanderson
J. Luke Sanderson (TN Bar # 35712)
44 N. Second Street, Suite 500
Memphis, TN  38103
Tel:  (901) 523-1844
Fax: (901) 523-1857
Email:  Luke@wcwslaw.com

**WHATLEY KALLAS, LLP**

Joe R. Whatley, Jr.[*]
W. Tucker Brown[*]
2001 Park Place North
Suite 1000
Birmingham, AL  35203
Phone:  (205) 488-1200
Fax:  (800) 922-4851
Email:  jwhatley@whatleykallas.com
           tbrown@whatleykallas.com

**WIGGINS CHILDS PANTAZIS FISHER & GOLDFARB**

Dennis G. Pantazis[*]
D.G. Pantazis, Jr.[*]
The Kress Building
301 19th Street North
Birmingham, AL  35203
Phone:  (205) 314-0500
Fax:  (205) 254-1500
Email:  dgp@wigginschilds.com
           dgpjr@wigginschilds.com

[*] Motion for Admission *Pro Hac Vice* to be promptly filed.